Westlaw.

Slip Copy, 2011 WL 1042764 (D.S.C.)
(Cite as: 2011 WL 1042764 (D.S.C.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. South Carolina,
Beaufort Division.
Moses SMALLS, Plaintiff,
v.
DORCHESTER COUNTY SHERIFF'S DEPARTMENT and Deputy John Michael Moyer, Defendants.

Civil Action No. 9:10-0421-MBS-BM.
Feb. 16, 2011.

Moses Smalls, Summerville, SC, pro se.

### REPORT AND RECOMMENDATION
BRISTOW MARCHANT, United States Magistrate Judge.

*1 This action has been filed by the Plaintiff, *pro se,* pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the Defendant Moyer, a sheriff's deputy, used unconstitutionally excessive force against him during an arrest.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 27, 2010. As the Plaintiff is proceeding *pro se,* a *Roseboro* order was entered by the Court on September 28, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

After having received an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion for summary judgment on November 17, 2010, following which the Defendants filed a reply memorandum on January 11, 2011. Defendants' motion is now before the court for disposition.[FN1]

> FN1. This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

### Background and Evidence
Plaintiff alleges in his verified complaint [FN2] that on February 29, 2007 his stepdaughter placed "a call" that resulting in deputies responding to his residence. Plaintiff alleges that when he and his wife heard someone yelling from the front room, he went out and found that there were two deputies standing in his living room stating that they had received a call about a "domestic". Plaintiff alleges that his wife came out and was talking to the Defendant Moyer, at which time he [Plaintiff] started walking towards his son's room to check on him. Plaintiff alleges that Moyer then yelled out "where was I going?", and that when he replied that he was going to check on his son Moyer ordered him to "get back here I am not done talking to you." Plaintiff alleges that he tried to explain to Moyer that he was going to check on his son and that Moyer could come with him, but that Moyer "ran down the hallway grabbed me by the arm telling to put my hands behind my back."

> FN2. In this Circuit, verified complaints by *pro se* litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1042764 (D.S.C.)
(Cite as: 2011 WL 1042764 (D.S.C.))

Page 2

case.

Plaintiff alleges that he asked Moyer "what for", and that when Moyer kept telling him to put his hands behind his back, he kept asking "what for?". Plaintiff alleges that Moyer then pulled out his "cap stun" and sprayed him in the face. Plaintiff alleges that when he asked Moyer what he was doing, Moyer again told Plaintiff to put his hands behind his back, at which time Plaintiff alleges he again asked Moyer "what for", at which time Moyer "sprayed me again." Plaintiff alleges that Moyer "kept trying to place handcuffs on me without cause, he then placed one cuff on my left wrist, and took me to the floor, placed his knee on my neck area making it hard for me to breath least more (sic) speak." Plaintiff alleges that Moyer then punched him in the face while yelling at him to put his other (right) hand behind his back. Plaintiff alleges that he tried to comply but could not because Moyer was restricting him with his weight, and that Moyer then punched him in the eye again telling him to put his hand behind his back. Plaintiff alleges that he was then able to tell him that he could not comply because of Moyer being on top of him, at which time Moyer removed his knee. Plaintiff alleges that Moyer then placed the other cuff on him "but never once told me what he was arresting me for."

*2 Plaintiff alleges that Moyer had previously been "let go" from the Summerville Police Department due to unlawful use of force, and that the Defendant Dorchester County Sheriff's Office should be liable for not doing a "good job on the background check ....". Plaintiff seeks compensation for his injuries and medical bills. *See generally, Verified Complaint.*

In support of summary judgment, the Defendant Michael Moyer has submitted an affidavit wherein he attests that he is a Dorchester County Sheriff's Deputy, and that on February 29, 2008 he responded to a domestic dispute call in Summerville, South Carolina. Moyer attests that upon arriving at the home, he initially made contact with the Plaintiff, who stated that "nothing was going on." Moyer attests that, upon speaking with the Plaintiff he immediately smelled alcohol on his breath, and that upon conducting an investigation regarding a domestic dispute and speaking with Mrs. Smalls, he determined that Plaintiff had assaulted her. Moyer further attests that while interviewing Mrs. Smalls, Plaintiff (a former sheriff's deputy) attempted to walk to his bedroom several times, and that he [Moyer] was concerned that Plaintiff was going to retrieve a firearm from his bedroom. Moyer attests that he gave Plaintiff a lawful command to stay in the room until the investigation was complete on three separate occasions, but that Plaintiff refused to comply with his requests. Moyer attests that he then told Plaintiff that he was being placed under arrest for criminal domestic violence. Moyer attests that at that time he and Plaintiff were located in a narrow hallway, and that Plaintiff began struggling with him. Moyer attests that he commanded the Plaintiff to stop resisting arrest several times, but that Plaintiff refused to comply. Moyer attests that because the hallway was so narrow, he could not properly use his police baton, and it was not appropriate to use his handgun since there was no indication that lethal force was necessary. Moyer attests that he therefore attempted to use pepper spray to subdue the Plaintiff, but that Plaintiff was not subdued by the use of pepper spray, and in fact Plaintiff knocked the pepper spray out of his hand during the altercation. Moyer attests that because the situation was quickly escalating, and because he no longer possessed his pepper spray, he made a split second decision and punched Plaintiff in his right eye before finally effectuating his arrest. *See generally, Moyer Affidavit.* The Defendant has also submitted a copy of the warrant charging Plaintiff with resisting arrest.

In opposition to the Defendants' motion, Plaintiff has submitted a copy of a transcript from a preliminary hearing held in state court on October 14, 2008. This transcript includes testimony from Officer Moyer about Plaintiff wanting to go back to a bedroom and Moyer instructing him not to do so. Moyer's testimony is to the effect that Plaintiff re-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1042764 (D.S.C.)
(Cite as: 2011 WL 1042764 (D.S.C.))

Page 3

fused to comply and actually made several attempts to go down the hallway, and that Moyer told Plaintiff if he refused to listen to him, that he was going to have to put Plaintiff in handcuffs until they figured out what was going on. Moyer also testified that he attempted to prevent Plaintiff from going down the hallway and told Plaintiff he was going to spray him with pepper spray if he went down the hallway again. Moyer testified that he ended up having to spray Plaintiff four different times. Moyer further testified at the preliminary hearing that his training from the Criminal Justice Academy was that there are two places you do not want people to go, to the kitchen or the bedroom, because the kitchen has things like knives, while most people who own firearms keep them in their bedrooms. Deputy Moyer also testified that there was "quite a bit of a struggle to the point where we fought in the hallway", and that after the pepper spray as well as his baton were knocked out of his hands, "[t]he only thing I had left to do in reference to the blow, I ended up striking [Plaintiff] in the face with a closed fist to where he was finally able to be handcuffed." Moyer testified that he struck Plaintiff one time on the right side of the face. *See* Plaintiff's Exhibit A.

*3 Plaintiff has also provided a copy of the arrest warrant charging him with resisting arrest (Plaintiff's Exhibit B), copies of some photographs of his injuries (Plaintiff's Exhibit C), and a copy of an Internal Investigation Report from July 11, 2007 and a report of a motor vehicle collision dated March 28, 2001, both of which involved Moyer. (Plaintiff's Exhibit D).

As attachments to their reply memorandum, the Defendants have submitted an affidavit from Jeff Finch, Records Custodian for the South Carolina Criminal Justice Academy. Finch attests that attached to his affidavit is a true and correct copy of a Notification of Separation/Termination from the Criminal Justice Academy received from the Summerville Police Department on July 12, 2007 reflecting the termination of the Defendant Moyer from that department. Finch attests, however, that the Defendant Moyer's certification from the Criminal Justice Academy has never been revoked or denied. *Finch Affidavit,* with attached Exhibit.

The Defendants have also submitted an affidavit from Michael Turner, who attests that he was formerly employed by the Dorchester County Sheriff's Office, and that part of his job responsibilities included assisting the sheriff in the hiring of new deputies. Turner attests that Moyer applied for a deputy position with the Sheriff's Office, and that prior to applying for that position, he had been employed with the Summerville Police Department. Turner attests that during Moyer's interview it was determined that Moyer may have use excessive force during an arrest, following which both he and the Sheriff reviewed the videotape of this incident and came to the independent conclusion that Moyer had used appropriate for in the arrest of a suspected felon. Turner further attests that he was advised that no mandatory retraining notice had ever been issued for Moyer, nor had Moyer's law enforcement certification ever been revoked. *See generally,* Turner Affidavit.

Finally, the Defendants have provided an affidavit from Joli Tumbleston, who attests that she is a Dorchester County Sheriff's Deputy. Tumbleston attests that on February 29, 2008, she responded with the Defendant Moyer to a domestic disturbance call at Plaintiff's address, with the dispatch advising them that there was a female victim with a possible broken arm. Tumbleston attests that, as they arrived at the house, she saw a black female (later identified as the Plaintiff's daughter) run into the house. Upon entering the residence, they made contact with the Plaintiff and his wife, at which time she asked the parties if anyone was hurt. Tumbleston attests that Plaintiff shook his head indicating "no", but that Mrs. Smalls was observed to be crying and acting visibly upset while holding her left upper arm/shoulder area. Tumbleston attests that she asked Mrs. Smalls if she was injured, that Mrs. Smalls replied "yes", and then stated "he

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1042764 (D.S.C.)
(Cite as: 2011 WL 1042764 (D.S.C.))

needs to leave". Tumbleston attests that upon further questioning of the parties, Plaintiff appeared agitated and was noncompliant.

*4 Tumbleston attests that she brought Mrs. Smalls from the living room of the home to separate her from the Plaintiff, and that while speaking with Mrs. Smalls she indicated that Plaintiff had gotten into a fight with his daughter that later escalated to a fight with her. Tumbleston attests that based on her investigation there was probable cause to arrest Plaintiff for criminal domestic violence, and that because of the nature of the charges, Plaintiff's size, and his noncompliant demeanor, she stepped outside onto the front porch of the house to call for backup. Tumbleston attests that while outside, she heard Moyer give several commands to the Plaintiff to sit down and relax and then heard a loud thump from the house as if someone had fallen down. Tumbleston attests that she ran to the house and observed Mrs. Smalls crying hysterically. She then heard her call number come across her radio from Moyer, at which time she ran down a hallway in the home and observed Plaintiff and Moyer on the ground. Moyer was attempting to restrain the Plaintiff.

Tumbleston attests that she then assisted in the Plaintiff's arrest by jumping on the Plaintiff's back and attempting to place him in handcuffs, and that Plaintiff was noncompliant throughout their attempt to place him under arrest.

Tumbleston attests that, based on her professional experience and personal observations, Moyer did not use excessive force against the Plaintiff, but only used the appropriate amount of force necessary to effectuate the arrest of the Plaintiff, who was noncompliant and actively resisting arrest. Further, once Plaintiff was in handcuffs, no further force was used. In addition the statements in Tumbleston's affidavit, she has attached to her affidavit true and correct copies of the Incident Report, Supplemental Incident Report, and Witness Statements filed in this case. The witness statements detail acts of alleged criminal domestic violence and/ or assault by the Plaintiff prior to sheriff's deputies arriving on the scene, while the Incident Reports support the statements made in the affidavits provided by the Defendants. *See generally,* Tumbleston Affidavit, with attached Exhibits.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir.1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. *Baber v. Hosp. Corp. of Am.,* 977 F.2d 872, 874-75 (4th Cir.1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Social Services,* 901 F.2d 387 (4th Cir.1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

*5 First, the Defendant Dorchester County Sheriff's Department is an agency of the State of South Carolina, and is therefore immune from suit in this Court for damages under Section 1983. *Dean v. Barber,* 951 F.2d 1210, 1215 n. 4 (11th Cir.1992) [a county sheriff's department is not a proper de-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1042764 (D.S.C.)
(Cite as: 2011 WL 1042764 (D.S.C.))

Page 5

fendant in a § 1983 action because state law did not allow it to be sued]; *Snead v. Alleghany Sheriff Dep't,* No. 09-198, 2009 WL 2003399 at * 1 (W.D.Va. July 7, 2009) ["Because Eleventh Amendment immunity extends to [ ] Sheriff's Department, [Plaintiff] has not stated a proper Defendant for § 1983 purposes."]; *see generally, Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Brooks-McCollum v. Delaware,* 213 Fed.Appx. 92, 94 (rd Cir.2007); *Metz v. Supreme Court of Ohio,* 45 Fed.Appx. 228, 236, 237 (6th Cir.2002); *see also Coffin v. South Carolina Dep't of Social Services,* 562 F.Supp. 579, 583-585 (D.S.C.1983); *Belcher v. South Carolina Board of Corrections,* 460 F.Supp. 805, 808-809 (D.S.C.1978). Therefore, the Dorchester County Sheriff's Department is entitled to dismissal as a party Defendant even if the case against the Defendant Moyer is allowed to proceed.

With respect to the Defendant Moyer, as a sheriff's deputy this Defendant is subject to suit for damages under § 1983 in his individual capacity. *Will v. Michigan Dep't of State Police,* 491 U.S. at 71; *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 365, 116 L.Ed.2d 301 (1991); *Goodmon v. Rockefeller,* 947 F.2d 1186 (4th Cir.1991); *Inmates v. Owens,* 561 F.2d 560 (4th Cir.1977). Although Plaintiff's claim is presented in his Complaint as an excessive force claim, he argues in his memorandum opposing summary judgment that he was also subjected to a "false arrest". However, Plaintiff's allegations and evidence are not sufficient to maintain a constitutional claim against this Defendant.

With respect to Plaintiff's "false arrest" claim, as a Dorchester County Sheriff's deputy and law enforcement officer, Moyer certainly possessed the authority to arrest the Plaintiff. *See* S.C.Code Ann. § 23-13-280(3) and(4); *see United States v. Trigg,* 878 F.2d 1037, 1041 (7th Cir.1989) [an arrest is constitutional as long as the arresting officer is authorized by state and/or municipal law to effect a custodial arrest for a particular offense]. Further, one of the elements for a claim of false arrest or imprisonment is that the restraint be unlawful, and Plaintiff has made no showing that he was unlawfully restrained. The evidence before the Court provides ample probable cause for Plaintiff's arrest on both domestic violence and resisting arrest grounds. *See Taylors v. Waters,* 81 F.3d 429, 434 (4th Cir.1996) [In assessing the existence of probable cause, courts examine the totality of circumstances known to the officer at the time of the arrest]; *Jist v. Berkeley County Sheriff's Department,* 336 S.C. 611, 521 S.E.2d 163, 167 (S.C.Ct.App.1999) [Restraint must be unlawful to have claim for false arrest or imprisonment]; *Jones v. City of Columbia,* 301 S.C. 62, 389 S.E.2d 662, 663 (S.C.1990) ["An action for false imprisonment cannot be maintained where one is arrested by lawful authority"].

*6 With respect to Plaintiff's assertion that excessive force was used against him, under the **Fourth Amendment** [FN3] claims of excessive use of force during an arrest are considered under an "objective reasonableness" standard. *Orem,* 523 F.3d at 446; *Smith v. Kendall,* No. 09-6452, 2010 WL 764051 (4th Cir. Mar.8, 2010). This test requires "balanc[ing] the nature and quality of the intrusion on the individual's **Fourth Amendment** interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *White v. Town of Chapel Hill,* 899 F.Supp. 1428, 1435 (M.D.N.C.1995), *aff'd,* 70 F.3d 1264 (4th Cir.1995); *Sweatt v. State of Maryland,* No. 89-3231, 1989 WL 126582 at ----1 (4th Cir.1989). What is objectively reasonable depends on what conditions exist at the time the alleged excessive force is used, recognizing that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Graham v. Connor,* 490 U.S. at 396; *see Greenidge v. Ruffin,* 927 F.2d 789 (4th Cir.1991).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1042764 (D.S.C.)  
(Cite as: 2011 WL 1042764 (D.S.C.))

Page 6

FN3. "The **Fourth Amendment** governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir.1997) (en banc), abrogated on other grounds, *Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (citing *Graham v. Conner*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Thereafter, the Fourteenth Amendment due process clause protects a pre-trial detainee from the use of excessive force that amounts to punishment. *Graham*, 490 U.S. at 395, n. 10. In the case at bar, the **Fourth Amendment** applies to Plaintiff's excessive force claim since the events he alleges transpired incident to his being taken into custody. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir.2008).

Here, considered in the light most favorable to the Plaintiff, the evidence reflects that the defendant and another sheriff's deputy responded to a domestic disturbance call on the date in question, and that upon arrival on the scene found evidence to support a charge that an incident of domestic violence had occurred. Further, Plaintiff himself concedes in the allegations of his verified complaint that during the course of the investigation he refused to comply with the Defendant's commands that he not go back to the bedroom, and that he then resisted having handcuffs placed on him. While Plaintiff complains that too much force was then used against him to affect his arrest, and it does appear from Plaintiff's evidence that he suffered some injury as a result of being taken into custody, the fact that an injury occurred does not mean that excessive force was used. *Sanchez v. Obando-Echeverry*, 716 F.Supp.2d 1195, 1207 (S.D.Fla.2010) [Finding that, "the severity of the injury alone does not transform the police officers' action ... from a good faith attempt to effectuate an arrest based on probable cause to a bad faith imposition of excessive force."]; *Gashi v. County of Westchestor*, No. 02-6934, 2007 WL 749684 at *7 (S.D.N.Y. Mar.12, 2007) ["Although a fractured noes is not a superficial injury, sustaining an injury, alone, does not demonstrate excessive force."]. Rather, when considering a police officer's actions under the "objective reasonableness" standard, the Court must consider the circumstances of the particular case, including the severity of the purported crime being committed, whether the subject posed an immediate threat to the safety of the police officers or others, and whether the subject was actively resisting arrest or attempting to evade arrest. *Graham*, 490 U.S. at 396; *see Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir.1988).

*7 As noted, the evidence shows that Sheriff's deputies were called to the residence for a domestic dispute, a situation which is often times tense, unpredictable, and occasionally even dangerous. Further, upon arrival, evidence of physical violence was present, and by Plaintiff's own admission he was uncooperative and then physically resisted being handcuffed and taken into custody. The fact that physical force may have been required to secure the Plaintiff under these circumstances is in no way objectively unreasonable. *See Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]; *cf. Bell v. Wolfish*, 441 U.S. 520, 540, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ["[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action"]; *Silvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir.1995) [Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)].

The evidence shows that at the time in ques-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1042764 (D.S.C.)
(Cite as: 2011 WL 1042764 (D.S.C.))

Page 7

tion, the Defendant had reasonable cause to believe that Plaintiff had been engaged in acts of physical violence shortly before the Defendant's arrival, there was certainly a reasonable basis to believe that Plaintiff posed an immediate threat to the safety of the police officers or others based on his noncompliant attitude and his recent use of physical violence against others, and Plaintiff admits that he was actively resisting or attempting to evade arrest. *Graham,* 490 U.S. at 396. Significantly, there is also no evidence that, once Plaintiff was handcuffed and under control, any further physical force was used against him. *Wilson v. Flynn,* 429 F.3d 465, 469 (4th Cir.2005) ["[Plaintiff] does not allege that the officers used any improper force after restraining him; this fact distinguishes [Plaintiff's] case from many in which we have held the Plaintiff has alleged an excessive force claim."]. Hence, while Plaintiff obviously did not like being taken into custody, the fact that he physically resisted Moyer's commands and efforts justified the use of some measure of force to gain his compliance, and the evidence just recited is not sufficient to give rise to a genuine issue of fact as to whether *constitutionally excessive* force was used against the Plaintiff in this instance.

Therefore, while Plaintiff may conceivably have a state law claim arising from this incident, the undersigned finds that Plaintiff's claim that a violation of his constitutional rights occurred should be dismissed. *See Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]; *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 200-203, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) [ § 1983 does not impose liability for violations of duties of care arising under state law]; *Baker v. McClellan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1976) [ § 1983 claim does not lie for violation of state law duty of care].

*Conclusion*

\*8 Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted,** and that this case be **dismissed.**

D.S.C.,2011.
Smalls v. Dorchester County Sheriff's Dept.
Slip Copy, 2011 WL 1042764 (D.S.C.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.